## THE SANTA ANA.

(District Court, D. Washington, N. D.   March 28, 1901.)

SALVAGE—EVIDENCE.

A steamer at Cape Nome became partially disabled by the breaking of two of her four propeller blades. The place had no harbor, and when visited by storms all the vessels that were able to do so were compelled to go to sea. The disabled steamer was able to do so. The steamer carried, more canvas and was better rigged for sailing than most steamships engaged in commerce on the Pacific Ocean. On the return voyage to Seattle the captain made an arrangement with the master of another steamer to be convoyed and towed if necessary. After leaving Cape Nome, such other vessel took the disabled ship in tow. The weather was pleasant, and when near Dutch Harbor the tow lines were let go, and each vessel proceeded independently into that port. The towing steamer was short of fuel, and on arriving at Dutch Harbor her supply of coal was nearly exhausted. Thereafter the disabled steamer started in tow of the other vessel for Seattle. Before completing the run, a third blade was broken off her propeller. *Held*, that though, in view of the moderate weather which prevailed, it is probable that the ship would have made a port without aid from any other vessel, still, as she was partially dis-

abled, and was in a place where violent storms were to be expected at that time of the year, it constituted a salvage service, though not of a high order of merit.[1]

Libel in rem against the steamship Santa Ana and her cargo by part of the officers and crew of the steamship Centennial to recover salvage. Hearing on the merits. Decree for libelants.

James Kiefer, for libelants and interveners.
Piles, Donworth & Howe, for claimant.

HANFORD, District Judge. The steamship Santa Ana, on a voyage from Seattle to Cape Nome, became partially disabled by the breaking off of two of her four propeller blades, the broken blades being opposite to each other, so that the remaining blades were effective, though not of equal force, to drive the ship through the water. The second blade was broken when the ship was in Behring Sea, and about 275 miles distant from Cape Nome, and, notwithstanding the loss of the two propeller blades, the ship proceeded on her way, and reached Cape Nome in safety. That place has no harbor, and during the detention of the Santa Ana it was visited by storms of such violence that all the vessels there which were able to do so were compelled to go to sea for safety. The Santa Ana went out and returned without assistance from other vessels, and proved herself to be manageable under her own steam power in rough weather. Besides her steam power, the Santa Ana carries more canvas and is better rigged for sailing than most of the steamships engaged in commerce on the Pacific Ocean. For the return voyage to Seattle the ship received on board 33 passengers and some freight, and departed from Cape Nome at 11:15 a. m., on the 8th day of November, 1900; there being at that time a stiff breeze and a rough sea. Before departure, however, the captain made an arrangement with the master of the steamship Centennial to be convoyed, and towed if necessary, and pursuant to this arrangement, the Centennial left Cape Nome within a half hour after the Santa Ana, proceeding slowly to keep within sight and hearing for some time, and then, to make better speed, took the Santa Ana in tow, proceeding towards Dutch Harbor. The weather moderated somewhat after the second day out, so that the two vessels proceeded together without straining and without difficulty. When distant about 80 miles from Dutch Harbor, the tow lines were let go, and each vessel proceeded independently into that port. The Centennial had but a scant supply of fuel on board, and before making Dutch Harbor a temporary superstructure on her deck, which had been placed there for the housing of animals when the ship was prepared for service of the United States as a transport, was torn up, and some of the lumber was used for fuel, and still upon arrival at Dutch Harbor her supply of coal was nearly exhausted. At Dutch Harbor the Santa Ana was safe. She could

[1] Salvage awards in federal courts, see note to The Lamington, 30 C. C. A. 280.

have remained there until a new propeller could have been sent and placed on her shaft; but, instead of remaining, she took on board 15 more passengers, and proceeded thence to Seattle in tow of the Centennial, the passage being made without encountering bad weather, but before completing the run a third propeller blade was broken off. Neither the owner, captain, first officer, nor chief engineer of the Centennial has made any claim for salvage, and it does not appear what, if any, compensation has been paid for the Centennial's service in aiding the Santa Ana to get back to Seattle. The libelants and interveners, including the Centennial's second and third officers, first and second assistant engineers, fireman, boatswain, carpenter, quartermasters, seamen, and men of the steward's department, are the persons suing for salvage in these cases. It is claimed by them that the Santa Ana was rescued from peril by the Centennial, that a reward for salvage was earned, and that they are entitled to share in the reward, because their services were necessary, and were given, and the voyage was prolonged, and its perils increased, by detention of their ship.

Considering the moderate weather which prevailed during the homeward passage of the two ships, it is probable that the Santa Ana would have made a port of safety without aid from any other vessel. Still, I find in the facts proven all the elements necessary to entitle the libelants and interveners to recognition as participants in a salvage service. I base this conclusion upon the main facts of the case, which are clearly proven, and are undisputed, viz.: The Santa Ana was partially disabled. Her broken propeller was not a safe dependence for a long voyage, and in the captain's testimony he expressed doubt as to her ability to return from Behring Sea under sail without help from her engines. She was in a place where violent storms were to be expected in November and the winter months. Until she reached Dutch Harbor there was no shelter or place where she could remain in safety until her owner could make provision for repairing the damage which she had sustained. The Centennial was not a towing vessel, but was employed as a carrier of passengers and freight. She was scantily supplied with fuel for the return voyage, and by prolonging the run to Dutch Harbor she took chances of being rendered helpless by being caught out without sufficient fuel to maintain speed sufficient to reach any port where coal could be obtained. I do not find that the libelants or interveners performed any extra labor outside of their regular duties on board the ship, for which they have been paid their wages. Their services as salvors are not of a high order of merit, still they are entitled to some compensation.

Considering all the facts and circumstances, the court makes the following awards: To the libelant George Haldorn, $50; D. H. Callahan, $50; David Hartsough, $40; Charles Kinnaman, $40; C. H. Lowentsjohn, $40; Charles Van Low, $40; E. Swanson, $40; M. C. Olson, $40; K. Brauer, $40; J. Henning, $40; L. C. Card, $40; E. Garrigan, $40; H. Docker, $40; John Herbert, $40; L. M. Dow, $40; Albert Henion, $40; L. Stephenson, $40; Guss Bergenson, $40; C. W. Carlson, $40; Frank Schmuck, $40; John L. Penny,

$20; Roscoe C. Cameron, $20; John Harding, $20; H. Courtland, $20; Fred Johnson, $20; Frank Mitchell, $20; W. R. Daly, $20; James Hogan, $20.

The court also awards to the libelants and interveners costs, but in taxing costs the clerk is directed to allow their proctor only one docket fee of $20, and two docket fees of $10 each, and the usual proctor's fees for depositions taken, as if there was but a single case and only one libelant represented. No interest will be allowed on the awards prior to the entry of the decree.

The court finds that the value of the Santa Ana at the time of her return to Seattle was $90,000, and the value of her cargo to have been $5,000. The salvage and costs awarded will be paid by the respective claimants in proportion to the values saved, as above specified.